The State of Ohio, Appellee, *v.* Sherman, Appellant. ■

[Cite as State v. Sherman (1973), 44 Ohio App. 2d 45.]

(No. 7019—Decided April 25, 1973.)

*Mr. Stephan M. Gabalac,* prosecuting attorney, and *Mr. Dennis J. Bartek,* for appellee.

*Mr. Richard E. McCune,* for appellant.

Mahoney, J. This is an appeal by the defendant, Eddie Sherman, Jr., from a conviction of armed robbery (R. C. 2901.13), rendered by a jury on May 9, 1972, in the Court of Common Pleas of Summit County.

Defendant's first assignment of error is that: the trial court erred "by permitting the alleged eyewitness to identify defendant * * * in open court and in the presence of the jury," because that identification, the defendant argues, was tainted by unduly suggestive pre-trial photographic identification procedure.

On the evening of August 23, 1971, Rita Vaughan was "held up" while clerking in her family's service store. The robber came into the store on two occasions for a period of three or four minutes each. The first time, he purchased a can of Blatz beer, and on the second trip the holdup took place. Rita followed the robber out of the store. He fled in a car and Rita got into her car and followed him. She was able to obtain the license number and a description of the automobile.

Later that evening, she was taken to the police station where she was shown about five "mug shots," and from that group she identified a photograph of the defendant as the man who had held her up. She was not confronted with the defendant that evening, and did not see him until the preliminary hearing, at which time she testified that she recognized the defendant before the hearing. She identified him at that hearing and at his trial before the jury.

Within a short time after the robbery, as a result of Rita's description, the police officers located the vehicle used in the crime. A search of that car, by the police officers, revealed a Blatz beer can, check book, driver's license, sunglasses, and certain papers belonging to the defendant. The car was titled and its plates were registered in defendant's name. Later that same evening, the defendant called the police department to report the automobile stolen. Defendant was located and arrested that same night, and charged with armed robbery.

The defendant contends that the identification of him by the use of "mug shots" was tainted by a police officer pointing out the defendant's picture and uttering words to the effect: "Doesn't this man look familiar"? The officer denied this statement during the voir dire hearing, held out of the presence of the jury. Rita Vaughan's testimony

is uncertain as to whether the officer made that statement, in substance, with regard to the individual picture or the group.

Rita Vaughan indicated repeatedly that she had made the identification without any suggestion or help from anyone, and just from viewing the pictures. Testimony reveals that each of the five pictures was of a black male; two of the men had goatees, and four of them (other than the defendant) were approximately 20 years of age. The defendant was allegedly at least 10 years older.

During defendant's trial, Rita Vaughan described the robber as follows:

" * * * The man was, oh, practically six foot tall and he was thin and he was black, and he had a black hat on, and sunglasses, and he had long sideburns, and he had a mustache and he had like a goatee that was more or less hooked onto the mustache like this. * * * He had work clothing and I don't know whether the shirt was green or the pants, but the combination was green and gray; very neatly pressed and real nice and clean."

The record reveals that, when defendant was arrested that same evening, his face was freshly shaved. At the time of trial, he had a goatee, or similar hirsute growth on his chin.

The question before this court is: Was Rita Vaughan's in-court identification of the defendant tainted by the viewing of "mug shots," and the statement of the police officer?

The case of *Simmons* v. *United States* (1968), 390 U. S. 377, 384, lays down the general standard for testing admissibility:

"* * * [W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

We have reviewed the record and find that Rita Vaugh-

an saw the robber and deliberately studied his features at close range over a counter on two occasions. Further, she observed him leave the store and followed him down the street to the place where he entered the car. She was very positive in her identification, and asserted that her selection of defendant's photograph out of the group of pictures was based purely on her recollection of the defendant as the man who had held her up. We find that her in-court identification of the defendant was from her independent recollection and observation of the defendant. We fail to find that the police photographic procedure was in any way "impermissibly suggestive." The first assignment of error is denied.

The second assignment of error states that "the weight and sufficiency of the evidence does not sustain appellant's conviction of armed robbery beyond a reasonable doubt." It is the thrust of defendant's contention that the prosecuting witness never actually saw a gun in the hand of the robber when he re-entered the store.

In this regard, Mrs. Vaughan's testimony was as follows:

"* * * I was filling the candy case * * * and this gentleman came in and he reached over the case. * * * He bent over very slowly * * * and he said 'I want all your money; put it in a paper bag, and hurry; I have a gun.' So, naturally I was fearful for my life and I was scared * * *.

"He said, 'I want all your money; I have a gun, and hurry up; put it in a paper bag.'

"* * * *

"Q. Did you see the positions of his arms?

"A. Yes. He was down like this.

"Q. And you're indicating that he had his right arm extended?

"A. Yes, sir.

"Q. Could you discern whether or not he had anything in his hand?

"A. Yes, sir. He had something that appeared to be a gun. He told me he had a gun, so therefore I was very fearful.

"Q. Can you tell me just what you observed?

"A. I observed his hand. His arm was stretched out. His hand was like this. Whatever he had in his hand, he had it covered with a cloth.

"Q. Could you describe the cloth?

"A. It was greenish colored cloth and soft. It was something like you'd use in a gas station as a cleaning cloth.

"* * *

"Q. But you never saw a gun, is that correct?

"A. I saw what appeared to be a gun. He told me he had a gun, so I definitely believed him.

"* * *

"Q. Whatever was underneath was covered by the cloth?

"A. Yes, sir. * * * All I could see was this cloth covering his hand with an object in his hand, which he said was a gun and I was scared.

"Q. How far up did this cloth go?

"A. Well, it covered his hand completely."

The defendant argues that the failure of Rita Vaughan to actually see a gun should have raised a reasonable doubt in reasonable minds that the state had proved that the defendant was "then and there armed with a certain dangerous weapon, to-wit: a gun," as charged in the indictment.

The defendant urges this court to modify the verdict to one of unarmed robbery, because the verdict of guilty of armed robbery is not sustained by the evidence.

As disclosed by the record, Mrs. Vaughan testified to statements made by the robber during the hold up. The jury, as the trier of the facts, had the right to believe or disbelieve the witness, and to decide whether the defendant was, in fact, truthful about having a gun under the cloth that covered his hand. These statements, together with the other circumstances, were sufficient for the jury to infer that the defendant had a gun.

The second assignment of error is rejected.

We have examined the record and find that the defendant was afforded a fair and impartial trial, and was represented by skilled counsel. We fail to find any error

prejudicial to any substantial right of the defendant.

The judgment of the trial court, entered on the verdict of the jury, is affirmed.

*Judgment affirmed.*

VICTOR, P. J., and WASSERMAN, J., concur.

WASSERMAN, J., retired, of the Eighth Appellate District, was assigned to active duty, in the Ninth Appellate District, under authority of Article IV, Section 6 (C), Constitution.